GARDNER *v.* NORTH LITTLE ROCK SPECIAL SCHOOL DISTRICT.

Opinion delivered December 10, 1923.

1.  SCHOOLS AND SCHOOL DISTRICTS—POWER TO CONTRACT.—Under Crawford & Moses' Dig., § 8942, authorizing school boards in certain cities to elect superintendents without restriction as to the length of the term of the employment and duration of the contract, a school board is not limited in its contracts employing superintendents to a period· of one year, nor to such a time as is within the term of office of all the members of the board, but may make a contract for a reasonable length of time, its reasonableness to be determined ·by all of the circumstances.

2.  SCHOOLS AND SCHOOL DISTRICTS—EMPLOYMENT OF SUPERINTENDENT —FRAUD.—The execution of a contract employing a superintendent of schools of a city, immediately before the school election, does not of itself warrant the inference that there was fraud or collusion between the superintendent and the board of directors.

3.  SCHOOLS AND SCHOOL DISTRICTS—EMPLOYMENT .OF SUPERINTENDENT. —Crawford & Moses' Dig., § 9030, prohibiting school directors from employing a "teacher to teach a school in any district in this State unless said district has money to its credit, in the treasury of the county in which said district is located, to pay said teacher for such work," *held* not to apply to the employment of a school superintendent.

4.  SCHOOLS AND SCHOOL DISTRICTS—DISCHARGE OF SUPERINTENDENT.— Proof that a superintendent of city schools, against the opposition of half of the school board, favored improvement of the school properties and an increase in the teachers' salaries, that he was persistent in advocating his policies even to the extent of challenging two members of the board to debate same with him, and that he actively engaged in political activities in a school election, *held* not to show such misconduct as to afford grounds for his discharge.

5.  DAMAGES—WRONGFUL DISCHARGE OF SUPERINTENDENT.—Where a
school district wrongfully discharged its superintendent of schools
before the expiration of his term of employment, it will be liable
to him for his salary during the remainder of such term, less such
amounts as he earned during such period.

Appeal from Pulaski Circuit Court, Second Division; *R. M. Mann*, Judge; reversed.

*Mehaffy, Donham & Mehaffy*, for appellant.

The plaintiff was discharged without cause. 147 Ark. 178; 152 Ark. 215; *Ottinger* v. *School District*, 157 Ark. 82.

*Coleman, Robinson & House*, for appellee.

The finding of the trial court will not be disturbed where there is any evidence to support it. 147 Ark. 178. The contract between plaintiff and the board was void. C. & M. Dig., § 9030.

McCULLOCH, C. J.  The plaintiff, E. B. Gardner, is by profession engaged in educational work, and on May 17, 1919, the defendant, North Little Rock Special School District, entered into a written contract with him whereby he was employed as superintendent of schools in said district for a period of two calendar years beginning on July 1, 1919, at a stated salary, payable at the end of each month. Plaintiff entered upon the discharge of his duties on the date specified in the contract for the commencement of his term of employment, and continued in the service until he was discharged by a resolution of the board of directors of the district, adopted June 21, 1920. The discharge was without plaintiff's consent, and he instituted this action, after the expiration of his term, to recover the amount of his salary, alleging that his discharge was wrongful and without fault on his part, and that he had been unable to obtain other employment during the remainder of the term of his contract with defendant.

The defendant in its answer tendered several defenses, one a denial that the district had made a valid contract with plaintiff for a term of two years; another

that, at the time of the execution of the contract, there were not available funds in the district to pay the salary of plaintiff, together with other school expenses, during the full period covered by the contract, and that for that reason the contract was void under the statutes of this State; and finally, on the ground that the discharge of plaintiff was not wrongful for the reason that he was "guilty of insubordination; that he refused to work in harmony with the board; that, instead of cooperating with the board and accepting its policies, plaintiff tried to dominate and control the board, and, to that end, devoted his efforts in stirring up strife among the patrons of the school and inciting the teachers against the board, and in political activities with a view to electing members of the board who would agree with him, with the result that the efficient conduct of the schools was impossible under plaintiff as superintendent, and plaintiff, by such conduct, became unfit to be superintendent and his influence damaging and detrimental to the interests of the schools."

The case was tried, by consent, before the court sitting as a jury, and the finding was in favor of the defendant.

The first question which presents itself is whether or not the directors of the district were empowered to enter into a contract with a school superintendent for a term of more than one year. This question was not expressly raised in the proceedings, but the denial of the execution of the contract itself is sufficient to raise the question of the legal power of the district to enter into the contract.

The statute governing single school districts, and conferring authority upon the directors of such districts in the management and control of school affairs, authorizes the directors to "employ a superintendent of the schools, who may also be principal of any graded or high school that said board may establish." Crawford & Moses' Digest, § 8942. It will be noted that there is

nowhere found in the statute any express restriction upon the authority of the district in employing a superintendent, so far as concerns the length of the term. If any such restriction exists, it must therefore be an implied one. In the case of *Gates* v. *School District,* 53 Ark. 468, this court held that the statute just referred to, conferring authority upon the board of directors to employ a superintendent of schools, does not limit the authority to an employment during the term of office of such directors, and that the statute does not forbid the board to make a contract with the superintendent for a term beginning after some members of the board go out of office. The question of employment for a longer term than one year was not involved in that case, but the term fixed by the employment did, in fact, extend beyond the term of office of some of the directors then in office, and the reasoning of the court leads inevitably to the conclusion that the statute does not restrict the power of the board to the employment of a superintendent for a single year. In disposing of the question involved, the court said:

"Public interest might suffer from unwise contracts covering an extended term in future; they might suffer equally for want of power to make a contract when a good opportunity offered. But with the question of policy we have no concern, except in so far as it aids in ascertaining legislative intent. There is nothing in the act that implies that the Legislature intended either more or less than it said. We therefore conclude that the act furnishes an accurate expression of legislative intent, and that there is no law that forbids the school board to make a contract for a superintendent for a term beginning after some members of the board go out of office."

We are of the opinion that the authorities sustain the view that the statute authorizing such an employment by a board of school directors or trustees, without any restrictions as to the length of term of the employment

and duration of the contract, is not limited to the period of one year, nor to such a time as is within the term of office of all the members of the board at that time.

In a case note to *Manley* v. *Scott*, 29 L. R. A. (N. S.) 652, the prevailing rule on this subject is stated as follows:

"Where there is no limit placed on the exercise of the power conferred upon school trustees or boards to contract with and employ teachers, a contract by such trustee or board employing a teacher for a term to commence or to continue after the expiration of the term of such trustee or board, is valid and binding upon their successors in office."

Cases are there cited to sustain the text, and we think the rule is sound.

The same doctrine is stated in 24 R. C. L., p. 579, as follows:

"In the absence of an express or implied statutory limitation, a school board may enter into a contract to employ a teacher or any proper officer for a term extending beyond that of the board itself, and such contract, if made in good faith and without fraudulent collusion, binds the succeeding board. It has even been held that, under proper circumstances, a board may contract for the services of an employee to commence at a time subsequent to the end of the term of one or more of their number and subsequent to the reorganization of the board as a whole, or even subsequent to the terms of the board as a whole. The fact that the purpose of the contract is to forestall the action of the succeeding board may not, of itself, render the contract void. But a hiring for an unusual time is strong evidence of fraud and collusion, which, if present, would invalidate the contract."

The proper rule seems to be that, unless the statute prescribes a time limit upon the duration of such a contract, the board may make a contract for a reasonable length of time, and the reasonableness of the con-

tract is to be determined by all the circumstances. The mere fact that there are partial changes in the personnel of the board during the life of the contract does not of itself render it unreasonable in duration of time. Whether or not a contract extending beyond the incumbency of all of the members of the board then in office would be unreasonable we need not determine, for no such state of facts exists with respect to the contract now before us. In the present case the contract was made immediately before the school election in May, 1919, and the term extended up to July 1, 1921. The terms of two of the directors then in office expired with the election in May, but if the contract with plaintiff had been for only one year, the board, as constituted prior to the school election in 1920, which was a majority as it existed when this contract was made, could have made a new contract for another year, so the making of this contract did not extend the employment beyond the terms of even a majority of the members of the board, and, under the decision in the Gates case, *supra,* the contract was valid. The fact that it was within the power of a majority of the board who would remain in office past the time when the second year of the term might be contracted for affords a reason, if no other existed, for holding that the contract was not unreasonable. Our conclusion is that the contract was valid, and that there was no defense on that ground.

It has been suggested that the execution of the contract immediately before the school election in 1919 warrants the inference that there was fraud and collusion between the plaintiff and the board of directors, but we do not think that that circumstance alone shows any collusion. The board as it then existed had the right to act within its statutory powers, even though such action anticipated the action of members of the board who were to be elected at the approaching election.

It is next contended that the employment for more than one year was in violation of the statute (Crawford

& Moses' Digest, § 9030) which prohibits the directors from employing a "teacher to teach a school in any district in this State unless said district has money to its credit in the treasury of the county in which said district is located to pay said teacher for such work." Without deciding whether or not this statute applies to employment in single school districts, it is sufficient answer to the contention that it in no event applies to the employment of anything but teachers. According to its express language it has no application to the employment of a school superintendent, therefore it has no bearing on the present case.

We come now to a determination of the question whether or not the discharge of the plaintiff from his employment was wrongful and without just cause.

The contract was, as before stated, executed just prior to the school election in May, 1919. Two new directors, Moseley and Foster, were elected at that election, and, immediately after their election and qualification, they joined in a letter to the plaintiff, notifying him that they objected to his employment for a term of two years, that it had never been the custom in the district for a superintendent to be employed for more than one year, and that there was no authority for employment for a longer term, and warning plaintiff that he need not come to the district with the expectation of serving for two years, and advising him to remain in the field where he was then employed.

It appears from the testimony that, prior to the time of the employment of the plaintiff and during the incumbency of his predecessor, there were two factions. one favorable and the other hostile to the superintendent of schools, and this factionalism continued during the period of plaintiff's service. The factionalism grew more and more acute, and resulted in a controversy over the election in May, 1920, by the two factions, one being designated as the Gardner faction and the other as the anti-Gardner faction. As the time for the election

approached, plaintiff wrote a letter to directors Moseley and Foster, reminding them of the fact that, by their letter to him before he came to assume the duties of his employment, they showed their antagonism and their opposition to his policies, and he challenged them to the sportsmanlike conduct of resigning their offices and running for reelection on an anti-Gardner platform so as to get an expression from the people of the district as to the respective policies of the plaintiff and these two directors. Moseley and Foster did not, however, accept the challenge, and they were not involved in the election further than their preference for the successors of the two directors whose terms had expired. Mann and Machin were candidates of the anti-Gardner faction, and Bennett and Ryan were candidates for the Gardner faction, and it is shown from the testimony that there was a heated campaign. At the election Mann and Machin were returned as having received the highest number of votes, and were declared elected, and entered upon the discharge of their duties, but there was a contest instituted by Bennett and Ryan, which resulted in their favor, and there was a judgment ousting Mann and Machin from office and awarding the offices to Bennett and Ryan. The discharge of plaintiff by the board of directors occurred while Mann and Machin were serving, and before they were adjudged not to be entitled to the office.

The contention of the defendant is that the plaintiff was guilty of insubordination to the authority of the board of directors, and that he became so active in political affairs of the district that he intensified the spirit of factionalism which existed and impaired his usefulness to the extent that he was no longer fit to manage the school. There is no contention that the plaintiff was lacking, to any degree, in moral character, or habits, or health, or that he was not up to a high standard of ability for the discharge of the duties of his employment. The testimony shows affirmatively that he is a man of good character, that no objections were made to his

methods of discharging the duties of his office, nor that he was to any degree inefficient. The sole contention is that he persistently pursued policies in hostility to the views of the members of the board, thereby making himself obnoxious to the members of the board, and that his overzeal in the political affairs of the district was detrimental to the school interests and rendered him unfit to discharge his duties.

Of course, in testing the sufficiency of the evidence to support the finding of the court, we must view the evidence in its strongest probative force and adopt any inference from the evidence which would be sufficient to sustain the finding of the trial judge. After a careful consideration of the evidence, we are of the opinion that, thus viewing it in its strongest light favorable to the cause of defendant, there is nothing of a legally sufficient nature to justify the finding that the conduct of the plaintiff afforded just grounds for his discharge. It is shown that the plaintiff favored a somewhat ambitious plan for enlargement of the school properties, for expensive grounds and buildings, and that in this policy he was supported by an even half, in numbers, of the board of directors, but was opposed by the other half. The evidence shows that he was persistent in the advocacy of his policies and plans, but never disrespectful nor personally offensive in his conduct toward the members of the board. All the witnesses who testified on this subject stated that there was lack of harmony between the superintendent and the board, but never any harsh feelings or offensive conduct. The most that the evidence shows on this subject is that the plaintiff adhered persistently to his views with respect to his plans for improvements in opposition to the wishes of at least half of the members of the board. It shows that he was not disposed to treat the decision of the board as final, in the sense that he ceased to attempt to impress his views upon the board, but there is no evidence to show

that there were any obstructive tactics on the part of the plaintiff, nor any overt act of insubordination.

There is also testimony on the subject of plaintiff's activity in school politics, that he entered with a considerable degree of activity into the campaign, and that he made a speech at one of the meetings just prior to the school election of 1920.

It is difficult to draw a line of demarcation between the political rights of a school-teacher, or others engaged in educational work, with respect to activity in politics. Certainly they are not denied the right of free speech or the right to a reasonable amount of activity in all public affairs. There is, however, a limit to such an extent that their usefulness in the work for which they are employed shall not be impaired. Their zeal in political activity must not carry them to such a degree of offensive partisanship that their usefulness in educational work is impaired or proves a detriment to the school interests affected by their service. It does not appear to us that the evidence in this case shows any such overzeal or activity on the part of the plaintiff. It is not contended that the schools' interests were injured, or that the efficiency in the school work in that district was lessened.

There is some evidence also that an organization, or a union, was formed among a large number of school-teachers in North Little Rock, but it is not shown that plaintiff was a member of this union, but merely that he favored it. Nor is it shown by the evidence that this organization was detrimental to the school interests of the district.

A contract of service of this kind is like any other contract, in the sense that it is binding upon the parties unless there are just grounds for avoidance. The directors have no right to discharge a teacher or superintendent unless there are just grounds for it, and these grounds must exist at the time of the discharge, not merely a bare fear that they may arise in the future.

*Argenta Special School District* v. *Strickland,* 152 Ark. 215. The nearest approach to impropriety in the conduct of the plaintiff, and which might tend to show insubordination and lack of harmony with the board of directors, is his written challenge to two of the members, Moseley and Foster, to resign and enter the election in May, 1920. But it must be remembered that this impropriety was invited, to a very large extent, by the conduct of the two directors themselves in opposition to the plaintiff before he began his work as superintendent of the district, and continuing such opposition as long as he remained in the service. There was a feeling of hostility initiated by the act of these two gentlemen themselves, which, to some extent at least, must have aroused a feeling of resentment on the part of the plaintiff, and his act in writing the challenge must be viewed in this light, which affords some palliation for the apparent impropriety. Viewing it, however, as an act of impropriety in which the plaintiff should not have permitted himself to indulge, we do not think that it was such misconduct as was sufficient to afford just grounds for plaintiff's discharge. The fault which caused the lack of harmony was not altogether with the plaintiff, and he should not be required to bear alone the results. Some allowance should be made for natural emotions and human imperfections, and the impropriety of the plaintiff and the two directors in engaging in personal correspondence, to some extent beyond the bounds of punctilious courtesy, is of too little significance to afford just grounds for the abrogation of a solemn contract.

Our conclusion therefore is that the evidence is not sufficient to sustain the finding that the plaintiff broke the contract: therefore his discharge was wrongful, and he is entitled to recover as damages the amount of compensation which he would have received under the contract, having failed to find other employment during the term.

The evidence as to actual loss sustained by plaintiff resulting from his wrongful discharge is also undisputed. He lost the salary for twelve months, at $280 per month, an aggregate of $3,360 for the whole period. He sought other employment, but succeeded in earning and receiving only the net sum of $266.65 during a short period in which he was engaged in commercial pursuits. He was elected mayor of the city of North Little Rock, and, taking office on April 11, 1921, he received the salary of $250 per month for a period of two and two-thirds months during the term prescribed by his contract with the school district, making an aggregate of $666 thus earned. This makes a total of $932.65 earned and received from all sources, which should be deducted from his salary of $3,360, leaving the net sum of $2,427.35 which he is entitled to recover. Plaintiff testified that he incurred and paid expenses in securing his nomination and election to the office of mayor in the sum, approximately, of $266, which, it is contended by his counsel, should be deducted from his earnings. We do not think this contention is sound, for the reason that plaintiff's election expenses were incurred in securing the office of mayor for a full term of two years, and should not be deducted from the salary earned during the first part of the term. The expenses are referable to the full term, and should not be apportioned to different periods. Whether election expenses should be deducted, under any circumstances, we need not now decide. The defendant introduced no testimony on this feature of the case, and the facts are undisputed.

The evidence has been fully developed on the whole case, and there is no reason for remanding it for a new trial.

Judgment will be entered here in favor of the plaintiff for recovery of the sum of $2,427.35, with interest at legal rate from the respective dates of maturity of the unpaid monthly salary prescribed in the contract between plaintiff and defendant. It is so ordered.

HART, J., (dissenting).   I agree with that part of the majority opinion which says that school teachers are not to be denied free speech, or a reasonable amount of activity in all public affairs. But I think it is fairly inferable from the testimony, when viewed in the light most favorable to the defendant, that the circuit court was justified in finding that the appellant denied this right to the teachers and pupils under him.

Some of the directors thought that the district was too deeply in debt to build any more schoolhouses or to pay better salaries to the teachers.   It seems that appellant thought otherwise, and caused a teachers' union to be organized for the purpose of obtaining better salaries for them and to also carry out his building program. The circuit court was justified in finding that the organization of the union divided the school into acrimonious factions.   The pupils took sides in the matter, and the union and non-union teachers held themselves aloof from each other, and the result was to seriously impair their usefulness as teachers.   The ultimate result was that the teachers, the pupils, and their parents all became active members of the rival factions.   Appellant challenged two members of the school board to resign and run for reelection because they opposed his policies. He reprimanded teachers and pupils severely for slight offenses because they did not join the union.

The testimony of the witnesses relating these facts was found to be true by the circuit court, and was, in my mind, sufficient to justify the directors in removing the appellant from the office of superintendent.   The school directors are intrusted by statute with the management of the affairs of the school district, including that of electing teachers.   If they cannot discharge a superintendent or teacher who, by his unwarranted activities, causes a division of the teachers, pupils, and patrons of the school into bitter factions, their usefulness is practically at an end.   In my judgment it does not make any difference which side was right, for the board of

directors may discharge for cause any teacher who, by his activities in any direction in opposition to the board, causes the school to be divided into factions which tend to lower the *morale* of the pupils. It seems to me that, under the holding of the majority in *Hall* v. *Bledsoe,* 126 Ark. 125, the finding of the trial court should be upheld.

I am also of the opinion that the decision of the court on the question of law is unwise as well as an unwarranted extension of the principles decided in *Gates* v. *School District,* 53 Ark. 468. In that case it was simply held that the board of directors could make a binding contract, before the school year opened, which would run into the succeeding year. If a director could not participate in making a contract for the services of a teacher that would lap over into the term of his successor, desirable teachers could not be secured. I think, however, that by necessary implication our Constitution and statutes forbid school boards from employing teachers for a longer term that of the succeeding school year.

It is will be remembered that our Constitution provides that the General Assembly may, by general law, authorize school districts to levy, by a vote of the qualified electors of such district, at an election held for that purpose, a tax not to exceed 12 mills on the dollar in any one year, for school purposes. Under our statute there are six directors for special school districts, and two of the six go out of office yearly. If the directors are allowed to reach out too far in advance in making contracts with teachers, they may seriously embarrass the school district. If the contracts are valid, the district must issue warrants to the teachers, whether there is any money in the treasury or not, to pay them. Thus it will be seen that in this way the value of the warrants would be greatly depreciated.

Hence I agree with the views expressed in *Gates* v. *School District, supra,* as I understand them, and disagree with the views expressed in the majority opinion herein. To say that a director can participate in mak-

ing no contract that shall be .operative beyond his official term is . too narrow, and to say that he can contract for services for teachers so far in the future as the present one is too wide.

Therefore I respectfully dissent.