Gerald W. SMITH, Plaintiff/Appellant,

v.

HARRIMAN UTILITY BOARD, Richard A. Hall, and the City of Harriman, Tennessee, Defendants, Appellees.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Feb. 9, 2000.

Application for Permission to Appeal Denied by Supreme Court July 17, 2000.

David A. Stuart, Clinton, TN, for the appellant, Gerald W. Smith.

Dean B. Farmer and Amy V. Hollars, Knoxville, TN, for appellees, Harriman Utility Board and Richard A. Hall.

Robert H. Watson, Jr. and Nathan D. Rowell, Knoxville, TN, for appellee, City of Harriman, Tennessee.

## OPINION

SWINEY, J.

This is an appeal by Gerald W. Smith ("Plaintiff") under T.R.A.P. Rule 3 alleging error in the Trial Court's granting Summary Judgment to Defendants/Appellees, Harriman Utility Board ("HUB"), HUB General Manager Richard A. Hall ("Hall"), and the City of Harriman, Tennessee ("Harriman"). Plaintiff was an employee of HUB, and after his employment was terminated filed suit for breach of contract, procurement of breach of contract in violation of T.C.A. § 47–50–109, retaliatory discharge, and promissory estoppel. The Circuit Court for Roane County entered summary judgment for Defendants on all claims. For the reasons set forth below, we affirm the judgment of the Trial Court.

## BACKGROUND

Plaintiff worked as gas, water, and sewer superintendent for Defendant HUB from March 1995 until his termination June 24, 1996. Plaintiff was hired by Jack Howard, who served as General Manager of Defendant HUB from July 4, 1991 until his death October 15, 1995. Plaintiff was apparently already employed and working in his position for approximately one month when Plaintiff and Jack Howard entered into a written employment agreement, setting forth a term of five years beginning March 24, 1995, with termination for reasons other than defined "cause" to result in Plaintiff's entitlement to "severance pay for the remaining portion of this contract including, but not limited to, unused sick leave, vacation and all other benifits [sic] enumerated in this contract." The agreement is dated two days after Jack Howard entered into a five-year employment contract with HUB to serve as General Manager of the organization.

Following the death of Jack Howard, Defendant Hall served as interim general manager for HUB until April 29, 1996, when he became general manager. On June 24, 1996 Plaintiff was given a Tennessee Department of Employment Security Separation Notice giving the reason for separation as "reorganization," and a letter to the effect that his position was being eliminated in a reorganization of HUB. The termination was effectuated immediately. On May 16, 1997, Plaintiff filed suit against HUB and Hall for both compensatory and punitive damages, asserting claims against HUB for retaliatory discharge under T.C.A. § 50–1–304 and for breach of contract, along with claims against Hall for retaliatory discharge under T.C.A. § 50–1–304 and procurement of breach of contract under T.C.A. § 47–50–109. Plaintiff subsequently amended his complaint to correct computational errors in the amounts averred as damages in the original complaint. After answering the complaint, HUB and Hall filed a motion to amend their answer. Resolution of this motion does not appear in the record. The Trial Court granted Plaintiff leave to file a second amended complaint, in which Harriman was added as a party Defendant, with the same claims asserted against Harriman by Plaintiff as originally averred against HUB. Next, Defendants HUB and Hall filed a joint motion for summary judgment, attaching statements of undisputed material facts and supporting affidavits, with Defendant Harriman filing a motion to dismiss a few weeks later.

On January 21, 1998, Plaintiff filed a third amended complaint by agreed order, adding claims for promissory estoppel and violation of 42 U.S.C. § 1983 against all Defendants. After the cause of action was removed to the United States District Court for the Eastern District of Tennessee, Plaintiff voluntarily dismissed the federal claims against all Defendants, and the remaining claims were remanded to the Circuit Court for Roane County. Before the removal and subsequent remand, Plaintiff filed a response to Harriman's motion to dismiss, and responded to HUB and Hall's motion for summary judgment with Plaintiff's affidavit and statements of additional material facts. Harriman filed its answer July 30, 1998. HUB and Hall then responded to Plaintiff's additional material facts, and Harriman moved for summary judgment. The Trial Court heard argument on all motions for summary judgment on April 20, 1999. On April 22, 1999 depositions of three former HUB board members who served during the material period of time were filed with the Trial Court. In its Judgment filed May 13, 1999, the Trial Court granted Defendants' motions for summary judgment as to all claims asserted by Plaintiff, with specific findings of fact and acknowledgment that the deposition transcripts were considered in rendering judgment. It is from this summary judgment that Plaintiff appeals.

## DISCUSSION

The standard of review on appeal of a Trial Court's grant of Summary Judgment is well established.

> Our review of the trial court's grant of summary judgment is purely a question of law; accordingly, our review is de novo, and no presumption of correctness attaches to the lower courts' judgments. A summary judgment is appropriate only if the moving party shows that no genuine and material factual issue exists and that he or she is entitled to relief as a matter of law. In reviewing the rec-

> ord to determine whether summary judgment requirements have been met, we must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor. *Byrd v. Hall,* 847 S.W.2d 208, 210–11 (Tenn. 1993). A summary judgment may be proper, therefore, only "when there is no dispute over the evidence establishing the facts that control the application of a rule of law." *Id.* at 214–15; Tenn. R.Civ.P. 56.

*Eyring v. Fort Sanders Parkwest Medical Center,* 991 S.W.2d 230, 236 (Tenn. 1999).

Plaintiff raises on appeal the general issue of error by the Trial Court in granting summary judgment in favor of Defendants, supported by specific charges of error in the form of questions of law as separate issues:

I. Whether T.C.A. § 47–52–117 confers authority for a general manager of a utility to enter into a fixed-term employment contract with an employee without approval of the utility board?

II. Whether the Defendant, Richard Hall, may be liable as an employer under T.C.A. § 50–1–304?

III. Whether the Trial Court was correct in finding no legal contract of employment for a fixed term and that, accordingly, an essential element is lacking for procurement of breach of contract under T.C.A. § 47–50–109?

IV. Whether Plaintiff can maintain a claim for promissory estoppel under the facts and circumstances of this case?

V. Whether the trial court was correct in dismissing Plaintiff's claims for punitive or exemplary damages?

Additionally, HUB raises an issue in the form of an alternative ground for summary judgment that the utility is not a legal entity independent from Harriman, and thus not subject to suit. Harriman argues that the City is a separate legal entity apart from HUB, and also entitled to sum-

mary judgment on additional grounds not addressed in the judgment of the Trial Court. While interesting, a resolution of the issue of whether HUB and Harriman are one entity or separate legal entities is not necessary in determining the relief to be granted, and therefore, this issue is not addressed in this Opinion. *T.R.A.P. Rule 36.*

As to Issue I, we agree with the Trial Court that T.C.A. § 7–52–117 does not confer authority for a general manager of a utility to enter into a fixed-term employment contract with an employee without approval of the utility board, and that Jack Howard had no authority to bind Defendants to the agreement presented by Plaintiff as an employment contract with HUB. The version of the statute in effect at the material times reads:

(a) The superintendent shall have charge of all actual construction, the immediate management and operation of the electric plant and the enforcement and execution of all rules, regulations, programs, plans and decisions made or adopted by the supervisory body.

(b) The superintendent shall appoint all employees and fix their duties and compensation, excepting that the appointment of all technical consultants and advisers and legal assistants shall be subject to the approval of the supervisory body.

(c) Subject to the provisions of § 7–52–132, the superintendent, with the approval of the supervisory body, may acquire and dispose of all property, real and personal, necessary to effectuate the purposes of this part. The title of such property shall be taken in the name of the municipality.

(d) The superintendent shall let all contracts, subject to the approval of the supervisory body, but may, without such approval, obligate the electric plant on purchase orders up to an amount to be fixed by the supervisory body, but not to exceed fifty thousand dollars ($50,000) or in counties that have adopted a metropolitan government, not to exceed two thousand dollars ($2,000). Any work or construction exceeding in cost the amount specified in the preceding sentence shall, before any contract is let or work done, be advertised by the superintendent for bids, but the supervisory body shall have power to reject any and all bids.

(e) The superintendent shall make and keep full and proper books and records, subject to the supervision and direction of the supervisory body.

T.C.A. § 7–52–117, Municipal Electric Plant Law of 1935, Powers of Superintendent.[1]

It is undisputed that HUB was organized under the Municipal Electric Plant Law of 1935 (hereinafter, "Act"), and that this particular statute applies to the utility. Plaintiff argues that this statute authorized Jack Howard, as general manager of HUB, to enter into an employment contract with Plaintiff for a five-year term, even though the contract was not approved by the HUB board. The contract presented by Plaintiff, misspellings and errors intact, reads:

### EMPLOYMENT AGREEMENT

This Agreement made this 24th day of March, 1995, between the General Manager of the HARRIMAN UTILITY BOARD hereinafter called the "Manager", and Gerald Smith hereinafter called the Employee.

1. PURPOSE. It is the desire of the Manager to retain the services of the Employee and to induce to remain in such employment, and to provide a just means of terminating his services.

2. DUTIES. The Employee shall well and faithfully serve the Manager in the capacity of Gas, Water, Sewer Supt. and

---

1. The exception in (d) for counties with metropolitan government and the related $2,000.00 monetary restriction was deleted effective June 19, 1997.

other such duties as the Manager shall from time to time assign.

3. TERM. The Manager shall employ Gerald Smith for a term of (5) years from the date hereof as Gas, Water, Sewer Supt.

4. SALARY. The Manager agrees to pay the Employee the basic salary and other benefits of employment that are in force on the day of this agreement and may increase compensation and benefits as the Manager may determin[e] that is desirable to do so.

5. TERMINATION. In the event that the employee is terminated by the Manager for reasons other than "cause" ("cause" is defined as conviction of an act involving personal gain or moral turpitude; continued unexcused absence from work; drug or alcohol abuse; adequate proof that the employee has been engaged in dishonest practices) the Employee shall be entitled to severance pay for the remaining portion of this contract including, but not limited to, unused sick leave, vacation and all other benifits [benefits] enumerated in this contract.

6. BINDING. This agreement shall be binding upon and inure to the benefit of the heirs at law and personal representatives of the Employee and the successors of the Manager.

Plaintiff offers a long argument regarding construction of the statute, averring that under the Act only the superintendent can hire employees for the utility, excepting "technical consultants and advisers and legal assistants." Plaintiff further argues that because Jack Howard had a five-year employment contract, it is reasonable that he could offer a five-year contract to Plaintiff within his statutory authority. Plaintiff cites in support of this proposition *Gardner v. North Little Rock Special School Dist.,* 161 Ark. 466, 257 S.W. 73 (1923). *Gardner* provides no guidance in this case, as it is neither on point to the issue nor supportive of Plaintiff's argument. In *Gardner,* the Arkansas Supreme Court found that a school board had the authority to enter into a two-year employment contract with a superintendent, even though the elective term of some of the board members would expire prior to the end of the employment contract term. Plaintiff does not stand in the position of the plaintiff in *Gardner,* as it is not a contract offered or approved by the HUB board at issue, it is an agreement between a superintendent, Jack Howard, and a lower-level employee, Plaintiff. Further, Plaintiff's argument that Jack Howard's extending a five-year contract to Plaintiff was a reasonable act under Jack Howard's contract approved by the HUB board fails by its own construction. The five-year agreement between Jack Howard and the HUB board would have expired by its terms two days before the agreement Plaintiff has proffered. This would create a situation where the superintendent, not the board, would enter a contract that ran beyond his own authority as superintendent, binding the board to employ Plaintiff beyond the superintendent's term without approval of the board.[2]

Additionally, Plaintiff's argument that T.C.A. § 7–52–117(d) authorized Jack Howard to execute the agreement at issue on behalf of the board is unfounded. That a supervisor is authorized to make "purchase orders up to an amount to be fixed by the supervisory body, but not to exceed fifty thousand dollars ($50,000)" has absolutely no application to an employment contract with an employee for an annual salary of $46,000.00. Even setting aside the obvious inapplicability of purchase order authority to an employment contract, this argument fails in its own statement in that the five-year term of the proffered agreement multiplied by Plaintiff's salary would far exceed the $50,000.00 statutory limitation.

**2.** As previously noted, Jack Howard died prior to the end of his own employment contract with the HUB board.

■ Although Plaintiff argues that three members of the HUB board knew of his employment agreement with Jack Howard, and thereby are bound by the actions of the superintendent, the record does not support this approach. While it is clear that enough board members to constitute a quorum, if not the entire board, knew that Jack Howard had hired Plaintiff, there is no proof in the record to establish a genuine issue of material fact that the proffered agreement was adopted by acquiescence of the HUB board. "And, again, 'genuine issue' as used in Rule 56.03 refers to disputed, material facts and does not include mere legal conclusions to be drawn from those facts." *Byrd,* 847 S.W.2d at 215. In fact, the record establishes that the three board members deposed did not learn of the agreement at issue until after Plaintiff was terminated. We agree with the Trial Court that Jack Howard did not act within his authority as general manager ("superintendent" under T.C.A. § 7–52–117) in extending an employment contract for a specific term to Plaintiff. This act was not authorized by statute or by the HUB board, and cannot be enforced by Plaintiff against any party to this cause of action.

■ As to Issue II, the Trial Court properly found that T.C.A. § 50–1–304 did not apply to HUB or Harriman because, at the time the cause of action accrued, these Defendants were immune as governmental entities. Plaintiff has not raised liability of HUB and Harriman under the retaliatory discharge statute on appeal, waiving the issue. *T.R.A.P. Rule 13(b).* Plaintiff does, however, allege error in the Trial Court's finding that Defendant Hall was not an employer under T.C.A. § 50–1–304. Plaintiff argues that the previously-discussed authority of a utility superintendent to hire employees under the Act makes the utility superintendent "in effect the employer of the plaintiff and others similarly situated." Plaintiff's strained construction fails, in that while a superintendent may have statutory authority to retain and ter-minate Plaintiff and others, it is only in acting within the scope of his duties as general manager for HUB, the employer, that Defendant Hall could have effectuated the termination of Plaintiff. The termination of Plaintiff was not an action in Hall's individual capacity, but rather an action taken on behalf of the employer, HUB. Since HUB and Harriman were immune from claims under T.C.A. § 50–1–304 at the time this cause of action accrued, Hall, acting within the scope of his employment duties for the immune entities, is shielded by the same immunity from suit under T.C.A. § 50–1–304. The record discloses that the HUB board was made aware of the reorganization and Plaintiff's termination, and approved the actions. See, *Williams v. Williamson County Board of Education,* 890 S.W.2d 788 (Tenn.Ct.App.1994)(where a common-law retaliatory discharge claim was not allowed against school board members in their individual capacities). We affirm the judgment of the Trial Court as to Issue II.

■ As to Issue III, we first note that Plaintiff's claims are asserted under T.C.A. § 47–50–109, and not raised under the common law tort of interference with employment relationship. Because Plaintiff's proffered agreement with Jack Howard fails to constitute an employment contract for a fixed term enforceable against Defendants, Plaintiff's claim for procurement of breach of that contract under T.C.A. § 47–50–109 also fails.

It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

*T.C.A. § 47–50–109.*

In order to state a cause of action for violation of the statute, Plaintiff must meet a seven-part test.

> The statute is declaratory of the common law except as to the amount of damages that may be recovered against a wrongdoer. [ ] The elements of a cause of action for procurement of the breach of a contract are: there must be a legal contract; the wrongdoer must have knowledge of the existence of the contract; there must be an intention to induce its breach; the wrongdoer must have acted maliciously; there must be a breach of the contract; the act complained of must be the proximate cause of the breach of the contract; and, there must have been damages resulting from the breach of the contract.
>
> *New Life Corp. of America v. Thomas Nelson, Inc.,* 932 S.W.2d 921, 926 (Tenn.Ct.App.1996)(discussing a cause of action under T.C.A. § 47–50–109).

We agree with the Trial Court that, based upon our review of the record, other than serving as an employee-at-will, Plaintiff had no valid employment contract with HUB at the date of his termination. This finding creates a failure to establish the necessary elements under T.C.A. § 47–50–109, as there was no binding contract of employment for a fixed term, and, therefore, no breach of contract. Accordingly, we affirm the Trial Court's judgment as to this issue.

As to Issue IV, the Trial Court found that Plaintiff could not maintain an action for promissory estoppel, and we agree. The Tennessee Supreme Court set forth the following definitions of promissory estoppel:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

\* \* \* \*

> Detrimental action or forbearance by the promisee in reliance on a gratuitous promise, within limits constitutes a substitute for consideration, or a sufficient reason for enforcement of the promise without consideration. This doctrine is known as promissory estoppel. A promisor who induces substantial change of position by the promisee in reliance on the promise is estopped to deny its enforceability as lacking consideration. The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the loss suffered in reliance is negligible, nor where the promissee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonable in justifiable reliance on the promise as made.
>
> *Alden v. Presley,* 637 S.W.2d 862, 864 (Tenn.1982).

Plaintiff does not dispute that the proffered agreement was executed some time after Plaintiff had begun his employment with HUB. Therefore, Plaintiff suffered no detriment in an economic sense, because whatever employment he gave up to work for HUB was already terminated by the time the "reliance" took place. Plaintiff relies on, inter alia, *Engenius Entertainment, Inc. v. Herenton,* 971 S.W.2d 12 (Tenn.Ct.App.1997), in which summary judgment in favor of the City of Memphis and others on claims of breach of implied contract and promissory estoppel was reversed. However, *Engenius* supports the judgment of the Trial Court.

Under the theory of promissory estoppel,

> [W]hen one ... by his promise induces another to change his situation

a repudiation of the promise would amount to a fraud. Where one makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and where such promise does in fact induce such action or forbearance, it is binding if injustice can be avoided only by enforcement of the promise. [ ]

This theory of recovery is sometimes referred to as "detrimental reliance" because, in addition to showing that the defendant made a promise upon which the plaintiff reasonably relied, the plaintiff must show that his reliance resulted in detriment to the plaintiff. [ ]

We conclude that EnGenius's complaint contained adequate allegations to support a claim of promissory estoppel because the complaint alleged that the Defendants made a promise which they reasonably should have expected to induce action on the part of EnGenius; that the Defendants' promise did induce such action; and that EnGenius relied on the promise to its detriment.

*Engenius*, 971 S.W.2d at 19–20.

We conclude that Plaintiff's complaint does not contain adequate allegations to support a claim of promissory estoppel because neither HUB nor Harriman made any promise to Plaintiff relating to this issue. Jack Howard, acting outside his statutory authority, may have done so, but the record does not support Plaintiff's proposition that HUB or Harriman did. We agree with the Trial Court's finding that Plaintiff's at-will employment created no detrimental reliance on employment with Defendants for any period of time, and thus fails to meet the criteria set forth in *Alden* or *Engenius,* and affirm the judgment of the Trial Court as to this issue.

As to Issue V, Plaintiff argues that punitive damages against Defendant Hall would be available under the common law tort of unlawful inducement of a breach of contract, but never presented the common law claim to the Trial Court. Plaintiff raised claims under T.C.A. § 47–50–109, as previously discussed, but the common law tort claim of unlawful inducement of a breach of contract does not appear in the complaint or any of the succeeding amendments, was not raised in the Trial Court, and cannot be raised for the first time on appeal.

Our jurisdiction is appellate only, T.C.A. § 16–4–108(a)(1), and thus the rule has long been well-settled that

> [t]his Court can only consider such matters as were brought to the attention of the trial court and acted upon or [pretermitted] by the trial court. *Irvin v. Binkley,* 577 S.W.2d 677, 679 (Tenn.Ct.App.1978); *Thomas v. Noe,* 42 Tenn.App. 234, 301 S.W.2d 391, 394 (1956); *Foley v.. Dayton Bank & Trust,* 696 S.W.2d 356, 359 (Tenn.Ct. App.1985).

This issue was not addressed by the trial judge or pretermitted by him; it cannot be raised for the first time on appeal. *Stewart Title Guar. Co. v. F.D.I.C.,* 936 S.W.2d 266, 270–271 (Tenn.Ct.App.1996).

Even if Plaintiff was not attempting to raise this issue for the first time on appeal, our affirmance of the Trial Court's finding of no liability on the part of any Defendant as to any allegation properly raised by Plaintiff necessarily forestalls availability of punitive damages. The judgment of the Trial Court as to Issue V is affirmed.

### CONCLUSION

The judgment of the Trial Court is affirmed, and this cause is remanded for further proceedings as necessary, if any, consistent with this Opinion and for collection of costs awarded below. Costs of this appeal are taxed to Appellant, Gerald W. Smith.

HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., concur.