# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

<table>
<tr><td>ENGENIUS ENTERTAINMENT, INC.<br>and PENCZNER PRODUCTIONS, INC.<br><br>   Plaintiffs/Appellants.<br><br>VS.<br><br>W. W. HERENTON, in his official<br>capacity, the CITY OF MEMPHIS,<br>TENNESSEE, JIM ROUT, in his<br>official capacity, and SHELBY COUNTY<br>TENNESSEE.<br><br>   Defendants/Appellees.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Shelby County Chancery Court<br>No. 107488-3 R.D.<br><br><br>C.A. No. 02A01-9704-CH-00078<br><br><br>FILED<br><br>October 31, 1997<br><br>Cecil Crowson, Jr.<br>Appellate Court Clerk</td></tr>
</table>

_____

From the Chancery Court of Shelby County at Memphis.
**Honorable D. J. Alissandratos, Chancellor**


**Mary l. Wolff**,
**Thomas J. Walsh**,
**Douglas A. Black**,
WOLFF ARDIS, P.C., Memphis, Tennessee
Attorneys for Plaintiffs/Appellants.


**Monice Hagler Tate**, City Attorney
**Patti C. Bowlan**, Assistant City Attorney
Attorneys for Defendants/Appellees W. W. Herenton and the City of Memphis, Tennessee.

**Donnie E. Wilson**, Shelby County Attorney
**Robert B. Rolwing**, Assistant County Attorney
Attorneys for Defendants/Appellees Jim Rout and Shelby County, Tennessee.


OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**


**FARMER, J.**


**HIGHERS, J.**: (Concurs)
**SUMMERS, Sp. J.**: (Concurs)

Plaintiffs EnGenius Entertainment, Inc., and Penczner Productions, Inc. (collectively, "EnGenius"), appeal the trial court's order which dismissed their complaint against Defendants/ Appellees W. W. Herenton, the City of Memphis, Jim Rout, and Shelby County. We reverse in part the trial court's judgment based on our conclusion that EnGenius's complaint, when construed liberally in favor of EnGenius, states claims against the Defendants for breach of implied contract and promissory estoppel.

## I. EnGenius's Complaint

EnGenius's 43-page complaint asserted claims for breach of contract (counts I and II), breach of implied contract (count III), promissory estoppel (count IV), "arbitrary and capricious conduct" (count V), and injunctive and declaratory relief (count VI). As pertinent to this appeal, the complaint contained the following allegations:

In 1993, the Defendants decided to seek a private developer to design, construct, and operate improvements to 121,000 square feet of undeveloped leasehold space in The Pyramid, a public arena in downtown Memphis. To this end, the Defendants prepared and issued a Request for Proposals ("RFP") for development of the space. The RFP provided that, upon selection of a developer, the specific rent structure would be negotiated between the parties. The RFP also provided that the term of the development contract would be negotiable but would "not exceed 20 years; a 10 year initial term with two renewal periods of 5 years each." The RFP required the selected developer to spend approximately $10 million on certain permanent improvements to the leasehold space, including an inclined elevator, which would become the property of the Defendants upon installation.

In June 1993, the Defendants sent RFP's to more than 200 potential developers across the nation, including EnGenius. EnGenius, along with two other potential developers, submitted proposals to develop the leasehold space by the August 30, 1993, deadline. EnGenius's proposal described a high-tech family entertainment theme park, to be known as the Island Earth EcoCenter. At the request of the Defendants, EnGenius formally presented its proposal to the Defendants' respective mayors, Herenton and then Mayor William N. Morris, at a meeting held on October 28,

1993.

By letter dated December 22, 1993, Mayors Herenton and Morris sent EnGenius a letter informing it that its proposal had been selected, provided that EnGenius could prove its financial capability to develop the project in accordance with its proposal:

> Following presentations for development of the leasehold space at The Pyramid, our administrations have carefully weighed the benefits of each proposal, their creativity, and most of all, their potential to create a unique tourist attraction for Memphis and Shelby County.
>
> As a result of this review, we have concluded that your partnership represents our best opportunity to achieve our goals for this space. Before making a final selection, we will give your partnership 60 days to prove your financial capability to develop this project in accordance with your proposal. If this financial benchmark can be reached, we shall begin immediately thereafter to prepare a contract between city and county governments and your company for the lease and development of this space.

In January 1994, the Defendants publicly announced that EnGenius had been chosen to develop the leasehold space in The Pyramid. The following month, EnGenius representatives attended a meeting with representatives of the Defendants at which EnGenius demonstrated its financial capability to complete the project.

Despite EnGenius's demonstration of its financial capability to develop the project, the Defendants refused or ignored EnGenius's repeated requests to discuss the terms of a lease agreement. Instead, in April 1994, Mayors Herenton and Morris decided to revive an entity known as the Public Building Authority ("PBA") and to delegate to the PBA the responsibility for developing the leasehold space in "a non-political, less bureaucratic manner." When EnGenius representatives expressed concern over this delay, City and County officials assured them that the Defendants did not intend to reopen the RFP process, that EnGenius's plan to develop The Pyramid had been chosen, and that EnGenius's plan was the only plan that the PBA would consider. Based upon these representations, EnGenius expended additional time and effort to make further presentations to the PBA.

EnGenius representatives first met with the chairman of the PBA in July 1994. At

that time, the PBA chairman expressed his view that the City and the County, and not EnGenius, should fund the permanent improvements to The Pyramid. At the PBA's first public meeting in August 1994, EnGenius again made a formal presentation of its plan to develop a theme park in The Pyramid. In September 1994, Jim Rout was elected to replace William N. Morris as Mayor of Shelby County. EnGenius representatives also attended a PBA meeting held in October 1994 at which EnGenius presented the details of its plan to finance the development project, as well as technological aspects of the project.

Despite their representations to the contrary, during the fall of 1994 City and County officials began discussions with other developers regarding proposals to develop The Pyramid space. In February 1995, City and County attorneys recommended rejecting EnGenius's financing plan, ostensibly because the plan did not comply with the RFP's requirement that the development plan "not require any investment by city and county governments." In contrast to the attorneys' recommendation, EnGenius representatives maintained that EnGenius's financing plan did not require any investment by the City or the County. Nonetheless, at a March 1995 meeting, the PBA adopted a resolution rejecting EnGenius's development plan and recommending that the City and the County pursue and evaluate alternative proposals for development of the leasehold space in The Pyramid. Although the PBA's stated reason for rejecting EnGenius's development plan was that it might require some level of financial involvement of the City and the County, the PBA's recommendation that the City and the County pursue alternative development proposals called for the City and the County to make a $10 million capital investment in The Pyramid by funding the permanent improvements to the building.

In May 1995, the Defendants formally notified EnGenius that they were considering other proposals for development of the leasehold space and that EnGenius would be required to make another formal presentation in order to receive further consideration of its plan. The Defendants represented that this new process would culminate in the selection of a developer.

On July 10, 1995, EnGenius again made a formal presentation to the Mayors regarding its plan to develop a family-oriented indoor theme park called Island Earth EcoCenter. In addition to presenting detailed plans and a video presentation regarding its creative concept,

EnGenius presented a comprehensive feasibility study of the project along with a draft of a proposed lease agreement. At the request of the City and the County, EnGenius later made another presentation at which it provided additional information.

In October 1995, the Defendants again notified EnGenius that it had been selected as the developer of The Pyramid space. In addition to both Mayors' verbal representations that EnGenius had been selected and that the Defendants would proceed to negotiate a lease with EnGenius, EnGenius received the following letter from Mayor Rout's assistant:

> I am pleased that as a result of Mayor Herenton and Mayor Rout's deliberations, your company has been selected as the vehicle for development of The Pyramid's "attraction space." Your innovative concept and the strength of your management team were the critical factors in this decision and all of us who have worked on this project are confident that Island Earth will become a highly successful, entertaining, cutting edge attraction for our community. Beginning next week, we look forward to finalizing the contractual arrangement between your company and the City and County governments so that we can begin development of this project as soon as possible.

Based on these representations by the Defendants, EnGenius began to spend time and effort finalizing the lease, detailing plans for construction, and negotiating with various entities to provide the services needed to complete the project. The Defendants encouraged EnGenius to begin negotiations with third-party vendors in order to keep the project on a "fast track."

The Defendants, meanwhile, retained outside counsel to draft the lease agreement with EnGenius. In November 1995, the Defendants' counsel informed EnGenius that the Defendants were demanding a $50,000 "non-refundable fee" for the right to negotiate with the Defendants. Taking the position that it already had acquired the right to enter into a lease agreement with the Defendants by virtue of its selection as the developer of the leasehold space, EnGenius refused to pay the $50,000 fee. Around this time, Mayor Herenton told a Memphis newspaper, *The Commercial Appeal*, that he had concerns about awarding a long-term lease to a private developer and that it might be best to maintain governmental control of The Pyramid. At a meeting held November 30, 1995, Mayor Herenton allegedly advised EnGenius that the City simply could use EnGenius's ideas and documentation to build the project without compensating EnGenius.

Mayor Herenton subsequently canceled a press conference which had been scheduled to announce EnGenius's selection as developer of The Pyramid space. By letter dated December 21, 1995, Mayors Herenton and Rout terminated any further negotiations with EnGenius, informing it that "the Request for Proposal process . . . has come to a conclusion. No selection of a developer is being made." This lawsuit followed.

## II. EnGenius's Breach of Contract Claims

In support of its breach of contract claims, EnGenius made the following assertions:

## COUNT I

### (BREACH OF CONTRACT)

. . . .

170.     The RFP constituted a solicitation of offers to develop the Leasehold Space in The Pyramid.

171.     EnGenius responded to the RFP with an offer to develop the Island Earth EcoCenter in the Leasehold Space. EnGenius's offer included not only the development of family-oriented high-tech attractions, but also the development of improvements to the infrastructure of The Pyramid.

172.     Pursuant to the terms of EnGenius's offer, the estimated cost of the development, approximately $24.5 million, was to be financed solely through private investment.

173.     By letter dated December 22, 1993, the City and County acting through their authorized representatives, Mayor Herenton and Mayor Morris, accepted EnGenius's offer, forming a binding agreement pursuant to which EnGenius was selected as the developer of the Leasehold Space, thereby acquiring the exclusive right to develop and operate the Island Earth EcoCenter and related attractions in the Leasehold Space of The Pyramid.

174.     The agreement between EnGenius and the City and County was subject only to the condition subsequent that EnGenius demonstrate its financial capability to develop the project.

175.     EnGenius satisfied the condition subsequent on or about February 28, 1994, but the City and County, acting through the PBA, Mayor Herenton and Mayor Morris refused to permit EnGenius to proceed with development of the Leasehold Space.

176.     The aforementioned acts of the PBA, Mayor Herenton and Mayor Morris in preventing EnGenius from performing under the contract were arbitrary and capricious, in bad faith, and constituted a

breach of the City and County's agreement to permit EnGenius to develop the Leasehold Space of the Pyramid.

. . . .

## COUNT II

### (BREACH OF CONTRACT)

. . . .

184. In or about March 1995, the City and County proposed a modification of its agreement with EnGenius, pursuant to which the City and County would spend up to $10 million on improvements to the infrastructure of The Pyramid, with EnGenius financing the remaining cost of the development of the Island Earth EcoCenter and related attractions through private investment.

185. Pursuant to the terms of the proposed modification, EnGenius acquired the exclusive rights to lease the Leasehold Space and to develop and operate the Island Earth EcoCenter and related attractions in the Leasehold Space of The Pyramid for a period of 20 years.

186. EnGenius agreed to this proposed modification of the contract, but thereafter the City and County breached their agreement by refusing to lease the space to EnGenius.

187. The aforementioned acts of the City and County and their authorized representatives were arbitrary and capricious, and otherwise constituted a breach of the City and County's obligation to deal with EnGenius fairly and in good faith to proceed with the development of the Leasehold Space of the Pyramid.

Our supreme court recently set forth the standard to be applied by a court in ruling on a motion to dismiss a complaint pursuant to rule 12.02(6) of the Tennessee Rules of Civil Procedure:

A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to state a claim as a matter of law. The motion admits the truth of all relevant and material allegations, but asserts that such facts do not constitute a cause of action. In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true.

*Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996).

Applying the foregoing standard, which requires us to accept all factual allegations

as true, we conclude that EnGenius's complaint fails to state a cause of action for breach of contract. In asserting its breach of contract claims, EnGenius relies on the existence of at least three documents to establish the existence of a contract: the RFP issued by the Defendants; EnGenius's response to the RFP; and letters from the Defendants informing EnGenius that it had been selected as the successful developer. The allegations of EnGenius's complaint and these documents, however, make clear that the parties also contemplated the subsequent execution of a formal contract memorializing the parties' agreement. The *Restatement (Second) of Contracts* addresses the question of whether a contract exists at this stage in the parties' negotiations:

**§ 27. Existence of Contract Where Written Memorial is Contemplated**

**Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations.**

**Comment:**

*a.* Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then concluded the contract.

*b.* On the other hand, if either party knows or has reason to know that the other party regards the agreement as incomplete and intends that no obligation shall exist until other terms are assented to or until the whole has been reduced to another written form, the preliminary negotiations and agreements do not constitute a contract.

*Restatement (Second) of Contracts* § 27 (1979).

As explained by another authority,

It is quite possible for parties to make an enforceable contract binding them to prepare and execute a subsequent final agreement. In order that such may be the effect, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. That document is understood to be a mere memorial of

the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; the so-called "contract to make a contract" is not a contract at all.

1 Arthur L. Corbin et al., *Corbin on Contracts* § 2.8, at 133-34 (Rev. ed. 1993) (footnotes omitted).

In accordance with the foregoing authorities, we hold that EnGenius's complaint fails to state a cause of action for breach of contract. When viewed in their entirety, the documents upon which EnGenius relies to establish the existence of a contract, as well as the allegations of EnGenius's complaint, make clear (1) that the parties intended to enter into a written contract memorializing their agreement, but (2) that the parties had not yet reached agreement on certain essential terms of the agreement. Specifically, the RFP issued by the Defendants indicated that two essential terms of the lease agreement would be negotiated after the Defendants selected a developer. Although the RFP required the developer to propose a minimum rent and percentage of gross revenues to be paid the Defendants, the RFP also provided that the specific rent structure would be negotiated between the parties upon selection of a developer. The RFP further provided that the term of the lease would be negotiable, although the term could not exceed 20 years. In the absence of agreement as to these two terms, we conclude that, as a matter of law, no agreement existed between the parties regarding EnGenius's development and lease of The Pyramid space. *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 74 (2d Cir. 1989) (holding that no binding contract existed where documents relied upon referred to possibility that negotiations might fail and to completion of binding sales agreement at some future date); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432-33 (7th Cir. 1993) (affirming trial court's dismissal of breach of contract claim where parties' preliminary agreement specified that any final agreement was subject to preparation and execution of mutually satisfactory purchase agreement); *Viking Broad. Corp. v. Snell Publ'g Co.*, 497 N.W.2d 383, 386 (Neb. 1993) (affirming summary judgment in favor of defendant where "letter of intent was so cursory, indefinite, and conditional as to fail as a matter of law to establish an objective intent on the part of the parties to be bound thereby"). At most, the documents evinced an agreement between the parties to negotiate in good faith to reach a final lease

agreement.[1] *See Arcadian Phosphates*, 884 F.2d at 74; *Venture Assocs. Corp.*, 987 F.2d at 433; *see also Arnold Palmer Golf Co. v. Fuqua Indus.*, 541 F.2d 584, 588-89 (6th Cir. 1976); *United Magazine Co. v. Prudential Ins. Co.*, 877 F. Supp. 1076, 1083 (S.D. Ohio 1995).

### III. EnGenius's Breach of Implied Contract Claim

Although EnGenius's complaint fails to state a claim for breach of an express contract, this failure does not preclude EnGenius from asserting a cause of action under a theory of implied contract. *See Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 345 (Tenn. App. 1994). While an express contract is created by the parties' actual assent to mutually acceptable terms, "a contract implied in law is imposed by operation of law, without regard to the assent of the parties, on grounds of reason and justice." *Id.* (quoting *Continental Motel Brokers, Inc. v. Blankenship*, 739 F.2d 226, 232 (6th Cir. 1984)). In order to state a cause of action under this theory, the plaintiff must allege the following elements:

> A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement for a recovery . . . is that the enrichment to the defendant be unjust.

*Haynes v. Dalton*, 848 S.W.2d 664, 666 (Tenn. App. 1992) (quoting *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966)).

In support of this theory, EnGenius made the following allegations:

> 192.  . . . [T]he City and County issued an RFP which constituted a solicitation of offers to develop the Leasehold Space in The Pyramid.

---

[1]In their brief, the Defendants draw a distinction between the competitive bidding process and the request for proposal process employed here. In our view, this distinction is irrelevant. EnGenius's claim that the Defendants were obligated to enter into a long-term lease for development of The Pyramid space was not based on the argument that EnGenius submitted the best proposal for such development but, rather, was based on the argument that, having selected EnGenius as the successful developer, and having promised to prepare an agreement, the Defendants were obligated to do so.

193. EnGenius responded to the RFP with an offer to develop the Island Earth EcoCenter in the Leasehold Space. EnGenius's offer included not only the development of family-oriented high-tech attractions, but also the development of improvements to the infrastructure of The Pyramid.

194. EnGenius's offer constituted a bid which properly responded to the RFP and which complied with the terms of the RFP, thereby giving rise to an implied contract between the parties.

195. Pursuant to the implied contract between the City and County and EnGenius, the City and County had an obligation of good faith and fair dealing which required them to respond to EnGenius' bid fairly, honestly and in good faith.

196. The City and County did not respond to EnGenius' bid fairly, honestly and in good faith, based on the facts as alleged herein and on the dealings between the parties generally. To the contrary, during and after EnGenius's persistent good-faith efforts to respond to the RFP, which efforts EnGenius continued to make despite additional and unreasonable demands and delays imposed by the City and County, the City and County treated EnGenius unfairly, arbitrarily, capriciously, inconsistently, and in bad faith, and generally with respect to the bid process acted without reasonable or rational basis.

We conclude that EnGenius's complaint alleges sufficient facts to state a claim for breach of an implied contract. Although the foregoing allegations do not specify that EnGenius conferred a benefit upon the Defendants for which it should be compensated, the factual allegations of EnGenius's complaint support such a theory. As pointed out in EnGenius's reply brief, for example, the complaint alleges that, at the Defendants' request, EnGenius caused to be prepared and presented to the Defendants a feasibility study which provided the Defendants with valuable information concerning EnGenius's proposed theme park, including the projected number of visitors to the attraction during its first five years of operation. EnGenius also provided the Defendants with the creative concept for the Island Earth EcoCenter, a concept which, according to EnGenius's allegations, the Defendants threatened to appropriate without compensating EnGenius.

We recognize that a factual dispute exists as to whether the information provided by EnGenius actually conferred a benefit upon the Defendants and, if so, the value of such benefit. In light of the allegations contained in the complaint, however, we hold that the trial court erred in granting the Defendants' motion to dismiss EnGenius's claim for breach of implied contract.

### IV.  EnGenius's Promissory Estoppel Claim

We likewise hold that the trial court erred in dismissing EnGenius's promissory estoppel claim.  As with EnGenius's implied contract claim, EnGenius's claim of promissory estoppel is not dependent upon the existence of an express contract between the parties. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73-74 (2d Cir. 1989); *United Magazine Co. v. Prudential Ins. Co.*, 877 F. Supp. 1076, 1084-85 (S.D. Ohio 1995); *Quake Constr., Inc. v. American Airlines*, 565 N.E.2d 990, 1004 (Ill. 1990).  Under the theory of promissory estoppel,

> [W]hen one . . . by his promise induces another to change his situation, a repudiation of the promise would amount to a fraud. Where one makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, and where such promise does in fact induce such action or forbearance, it is binding if injustice can be avoided only by enforcement of the promise.

*Foster & Creighton Co. v. Wilson Contracting Co.*, 579 S.W.2d 422, 427 (Tenn. App. 1978) (citing 17 C.J.S. *Contracts* § 74)); *see also Restatement (Second) of Contracts* § 90(1) (1979).[2]  This theory of recovery is sometimes referred to as "detrimental reliance" because, in addition to showing that the defendant made a promise upon which the plaintiff reasonably relied, the plaintiff must show that this reliance resulted in detriment to the plaintiff. *Foster & Creighton Co.*, 579 S.W.2d at 427; *Quake Constr.*, 565 N.E.2d at 1004.

We conclude that EnGenius's complaint contained adequate allegations to support a claim of promissory estoppel because the complaint alleged that the Defendants made a promise which they reasonably should have expected to induce action on the part of EnGenius; that the Defendants' promise did induce such action; and that EnGenius relied on the promise to its

---

[2]The *Restatement (Second) of Contracts* provides that:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach may be limited as justice requires.

*Restatement (Second) of Contracts* § 90(1) (1979).

detriment. *See United Magazine Co.*, 877 F. Supp. at 1084-85; *Quake Constr.*, 565 N.E.2d at 1004-05. Specifically, EnGenius made the following allegations:

> 201. . . . [T]he City and County made numerous representations and promises to EnGenius designed to induce EnGenius to incur time and expense responding to the City and County's repeated requests for information and preparing to develop the Leasehold Space of The Pyramid.
>
> 202. . . . [T]he City and County repeatedly promised and represented that they would enter into a contract with a private developer for construction of improvements to the Leasehold Space of The Pyramid, and further repeatedly represented and promised to award that contract to EnGenius.
>
> 203. In reliance upon the City and County's representations and promises, EnGenius responded to the City and County's requests, thereby incurring time and expenses in excess of $1,000,000.
>
> 204. After inducing EnGenius to incur substantial time and expense in reliance on the City and County's representations and promises, and after twice notifying EnGenius that it had been selected to develop the Leasehold Space of The Pyramid, the City and County arbitrarily, capriciously and in bad faith refused to permit EnGenius to develop the Island Earth EcoCenter and related attractions in the Leasehold Space of the Pyramid.

The Defendants contend that EnGenius's claims based on implied contract and promissory estoppel must fail because the RFP issued by the Defendants contained the following provision:

> This [RFP] does not obligate Shelby County Government or City of Memphis Government to pay any costs associated with the preparation and submission of the proposals or for costs associated with interviews or presentations.

Contrary to the Defendants' contention, this provision did not require the trial court to dismiss EnGenius's claims for implied contract and promissory estoppel. In asserting these claims, EnGenius does not claim that the Defendants are responsible for EnGenius's costs by virtue of the Defendants' issuance of the RFP. Rather, as we view the pleadings, EnGenius's claim for compensation is based on the allegation that the Defendants, having concluded the RFP process by selecting EnGenius as the successful developer, then induced EnGenius to incur additional expense and effort at the Defendants' request by representing that they would soon be entering into a long-

term lease with EnGenius for development of The Pyramid space. We also reject the Defendants' contention that the statute of frauds[3] bars EnGenius's implied contract and promissory estoppel actions. Although the statute of frauds may prevent the Defendants from seeking enforcement of an alleged oral agreement under these equitable doctrines, the statute does not preclude EnGenius from recovering damages for unjust enrichment or detrimental reliance. *See Steelman v. Ford Motor Credit Co.*, 911 S.W.2d 720, 723 (Tenn. App. 1995); *Cummins Cumberland, Inc. v. Dominion Bank*, No. 01A01-9008-CH-00287, 1991 WL 17176, at *2 (Tenn. App. Feb. 15, 1991).[4]

### V. EnGenius's Claims for "Arbitrary and Capricious Conduct" and Injunctive and Declaratory Relief

As for EnGenius's remaining claims, we affirm the trial court's dismissal of EnGenius's claim for injunctive and declaratory relief, inasmuch as EnGenius has not raised dismissal of this claim as an issue on appeal. We also affirm the trial court's dismissal of EnGenius's claim for "arbitrary and capricious conduct." While the authorities cited by EnGenius indicate that a governmental entity's actions may be challenged on the ground that such actions are arbitrary and capricious, these authorities do not support the existence of an independent cause of action for damages based on the Defendants' "arbitrary and capricious conduct." *See Metropolitan Air Research Testing Auth. v. Metropolitan Gov't*, 842 S.W.2d 611, 619 (Tenn. App. 1992); *Computer Shoppe v. State*, 780 S.W.2d 729, 737 (Tenn. App. 1989).

### VI. Conclusion

That portion of the trial court's judgment dismissing EnGenius's claims for breach of implied contract and promissory estoppel is reversed and this cause remanded for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

---

[3]T.C.A. § 29-2-101 (Supp. 1995).

[4]The Defendants also contend that any contract between EnGenius and the Defendants was not enforceable because the contract was not executed by the appropriate governmental officials as required by local ordinances. Even if this contention subsequently is proven to be correct, this would not necessarily preclude EnGenius from recovering from the Defendants on the equitable grounds of implied contract or promissory estoppel. *See City of Lebanon v. Baird*, 756 S.W.2d 236, 242-45 (Tenn. 1988).

Costs of this appeal are taxed one-half to EnGenius and one-half to the Defendants, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)

_____
SUMMERS, Sp. J. (Concurs)