IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

# BANK OF GLEASON, GLEASON, TENNESSEE v. WEAKLEY FARMERS COOPERATIVE, INC.

**An Appeal from the Circuit Court for Weakley County**
**No. 3313     The Honorable William B. Acree, Judge**

**No. W1999-02161-COA-R3-CV - Decided April 27, 2000**

This appeal arises from a complaint filed by the Bank of Gleason seeking to collect the amount due

on a promissory note. The Weakley Farmers Cooperative appeals from the judgment of the Weakley

County Circuit Court, which found the Bank was entitled to recover under the doctrine of promissory

estoppel. For the reasons stated herein, we affirm the trial court decision.


**Tenn.R.App.P. 3; Judgment of the Circuit Court Affirmed**

HIGHERS, J., delivered the opinion of the court, in which CRAWFORD, P.J., W.S., and LILLARD, J.,
joined.

Stephen L. Hughes, KIZER, BONDS & HUGHES, Milan, Tennessee, for Appellant

H. Max Speight, Dresden, Tennessee, for Appellee

**OPINION**

# I. Facts and Procedural History

In or around March of 1997, the Appellant, Weakley Farmers Cooperative ("Co-op"), held

a past due open account in the name of Paschall Farms with a balance due of $78,137.05.[1] Paschall

---

[1] Paschall Farms had previously bought fertilizer, seed, and other items commonly referred
to as "crop production inputs" from the Co-op on credit.

Farms was a farming operation consisting of Kevin Paschall and his father James Paschall. Kevin Paschall was also a customer of the Appellee, Bank of Gleason ("Bank"), and had received financing for his farming operation for several years prior to 1997.

In 1996, the Bank and Co-op entered into an agreement whereby the Bank loaned $20,000 to Kevin Paschall, and Mr. Paschall used this money to pay on his debt to Co-op. In return, Co-op agreed to supply the crop inputs and subordinated its lien on the 1996 crop proceeds to the Bank. Mr. Paschall then re-paid the Bank from the 1996 crop proceeds. The agreement apparently worked to the satisfaction of all parties.

In or around March of 1997, Kevin Paschall attempted to make financial arrangements concerning the coming crop year. To that end, Kevin had conversations with Terry Hankins, Co-op's manager, regarding the past due account, as well as his needs for the 1997 crop year. Co-op apparently took the position that it would not provide crop inputs for the 1997 crop year unless a substantial payment was made on the past due account. Mr. Hankins informed Kevin Paschall that Co-op would require a $42,000 payment before they would consider providing the crop inputs for the 1997 crop year.

At the same time that Kevin Paschall was negotiating with Co-op, he was also in discussions with James Terrell, acting on behalf of the Bank of Gleason. Additional conversations between Hankins and Terrell allegedly resulted in a proposal similar to that between the parties in 1996, whereby the Bank would loan Kevin Paschall a specified amount of money, of which $42,000 would

2

be paid to the Co-op.[2] The Bank alleges that in return, the Co-op agreed to provide the crop inputs for the 1997 crop year.

Before making a loan of this size, the Bank asked for, and received, a written statement from the Co-op. The statement is dated March 10, 1997 and is the only writing in existence regarding the alleged agreement between the parties. The writing states, "We, the Weakley Farmers Cooperative, agree to release crop proceeds to the Bank of Gleason in the amount of $82,000.00 plus interest or lesser amount borrowed in order to satisfy the Bank of Gleason's mortage [sic] on 1997 crop of Kevin Paschall." The typewritten statement is signed by Terry Hankins in his capacity as Co-op manager and appears on Co-op letterhead.

The Bank advanced Kevin Paschall a loan evidenced by a promissory note in the amount of $70,200.00, bearing contractual interest at the rate of 10.75%.[3] The promissory note is dated March 13, 1997. Co-op subsequently received a money order dated March 14, 1997, drawn on the Bank of Gleason in the amount of $42,000. The check referenced the name "Paschall" as the remitter.

In or around April of 1997, Co-op learned that James Paschall, Kevin's father, could not acquire financing for the 1997 crop year. Based upon this information, Co-op refused to extend

---

[2] Mr. Hankins testified that the $42,000 was only Kevin Paschall's part of the total debt owed to the Co-op. He claimed that Kevin's father, James, as a partner in the farming operation, also owed money to the Co-op. Mr. Hankins attributes the Co-op's refusal to provide the 1997 crop inputs to the elder Paschall's failure to pay his part of the debt.

[3] Kevin Paschall testified that Terry Hankins calculated the 1997 crop expenses on which the Bank based the amount of the loan.

credit to Paschall farms. As a result, Kevin Paschall was unable to farm during the 1997 crop year. The Bank sought return of the $42,000 but their written and oral requests were denied by Co-op.

On June 16, 1997, the Bank initiated the present lawsuit against Co-op seeking to recover the amount due under the promissory note. The Bank alleged that it would not have made the loan to Kevin Paschall "except upon assurances of the Defendant to release the lien against the 1997 crop, which lien could only be generated upon Defendant providing of the seed, fertilizer and chemicals for the new crop." The complaint sought recovery on the basis of a valid written contract or, in the alternative, on the basis of promissory estoppel. The Weakley County Circuit Court heard the matter on December 9, 1998. The trial court, sitting without the intervention of a jury, ruled that the Bank was entitled to recover all amounts due under the promissory note pursuant to the doctrine of promissory estoppel. This appeal followed.

## II. Law and Analysis

As an initial matter, we find it necessary to briefly discuss the issues which Co-op has presented for our review. Those issues are: 1) whether the Statute of Frauds precludes the Bank's recovery, 2) whether an enforceable contract existed between the parties, 3) whether the Bank was entitled to recover on the basis of promissory estoppel, 4) whether the Bank had a duty to mitigate its damages, and 5) whether the trial court erred in determining the amount of damages. A review of the record, as well as our own analysis, leads us to conclude that the first two issues are irrelevant to the resolution of this dispute. The trial court's award was based upon promissory estoppel, and

4

since we affirm on that basis, the existence of a valid contract, or lack thereof, has no bearing on our analysis. See Steelman v. Ford Motor Credit Co., 911 S.W.2d 720, 723-724 (Tenn. Ct. App. 1995) (holding that the statute of frauds does not preclude a party from recovering damages for unjust enrichment or detrimental reliance). Therefore, we express no opinion on the question of whether a valid and enforceable written contract existed between the parties.

*Promissory Estoppel*

A claim of promissory estoppel is not dependent upon the existence of an express contract between the parties. See Engenius Entertainment, Inc. v. Herenton, 971 S.W. 2d 12, 17 (Tenn. Ct. App. 1997) (citing Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73-74 (2d Cir. 1989); United Magazine Co. v. Prudential Ins. Co., 877 F.Supp. 1076, 1084-85 (S.D. Ohio 1995); Quake Constr., Inc. v. American Airlines, 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990, 1004 (1990)). Under the theory of promissory estoppel, "when one . . . by his promise induces another to change his situation, a repudiation of the promise would amount to a fraud." Foster & Creighton Co. v. Wilson Contracting Co., Inc., 579 S.W.2d 422, 427 (Tenn. Ct. App. 1978) (citing 17 C.J.S. Contracts § 74). This theory of recovery is also referred to as "detrimental reliance" because, in addition to showing that the defendant made a promise upon which the plaintiff reasonably relied, the plaintiff must show that this reliance resulted in detriment to the plaintiff. Engenius, 971 S.W. 2d at 17 (citing Foster & Creighton Co., 579 S.W.2d at 427; Quake Constr., 152 Ill.Dec. 308, 565 N.E.2d at 1004).

5

The most important element in finding promissory estoppel is the promise. "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Alden v. Presley, 637 S.W.2d 862, 864 (Tenn. 1982). In the present case, the question is whether Terry Hankins, acting on the Co-op's behalf, made a promise to the Bank which induced the latter to extend a loan to Kevin Paschall.

The record provides overwhelming evidence that: a promise was made, the promise induced the Bank to make the loan, the Bank was reasonable in relying on the Co-op's promise, and the Bank suffered damages. As succinctly stated by the trial court, "Co-op made an agreement or a promise to the Bank which Co-op expected to induce action on the part of the Bank, and it did. The Bank relied upon this to its detriment and was out many, many thousands of dollars."

In its defense, Co-op argues that there was no agreement as to the type or quantity of crop inputs to be supplied by Co-op. According to this argument, the uncertainty as to Co-op's obligation precludes recovery by the Bank. While it may be true that there was no way to know the exact amount of seed or fertilizer that would be needed, there is little doubt that the amount of crop inputs needed for the 1997 crop year was ascertainable within a very small range.

In briefly addressing this argument, we note that even in the context of oral agreements, the terms of the contract must only be "sufficiently definite" so as to be enforceable. Jamestowne on

6

Signal, Inc. v. First Fed. Sav. & Loan Ass'n, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990); Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n, 835 S.W.2d 25, 28 (Tenn. Ct. App. 1992). We have no doubt that the agreement in the present case was sufficiently definite so as to make Co-op aware of what it would be required to provide. We find it extremely persuasive that the parties had entered into a similar agreement the prior year without any problems. Also, Terry Hankins calculated the amount of money Kevin Paschall needed to borrow from the Bank. He based this calculation upon standard formulas which considered, among other things, the amount of land to be farmed. It would offend common sense to conclude that Mr. Hankins could figure the amount of money needed to farm a specified piece of land, yet be unable to calculate the approximate quantity of inputs that would be needed. Therefore, we find no merit in the argument advanced by the Appellant.

The testimony in this case clearly establishes that the Bank would not have lent Kevin Paschall any money but for the agreement with the Co-op. Co-op, obviously, disagrees with the notion that they agreed to provide crop inputs for the 1997 crop year. They claim that the only thing they agreed to do was subordinate their right to the proceeds from the 1997 crop to the Bank. This assertion makes little, if any, sense. As far as we can discern, Co-op would have had priority in regards to the 1997 crop proceeds only if they provided the crop inputs. However, the Co-op argues that it never agreed to provide crop inputs for the 1997 crop year. Therefore, the Co-op's contention is that the Bank issued a $42,000 check based solely on the Co-op's agreeing to waive a lien that it did not even have.[4]

---

[4] In fact, Terry Hankins admits that the Co-op had no claim on the 1997 crop.

7

The trial court found that Terry Hankins never stated that the agreement between the Co-op and the Bank was contingent upon James Paschall receiving financing or paying a debt. The court also found that Terry Hankins never told the Bank that after payment of the $42,000, the Co-op would <u>consider</u> providing the crop inputs for the 1997 crop year. As the trial court stated, "[i]t is obvious that Mr. Hankins did not say any of that because the Bank would not have loaned Kevin Paschall the money." The Co-op's basic contention is that the Bank handed over $42,000 in return for an absolutely worthless promise by the Co-op. Based upon its factual determinations, the trial court rejected this notion, and we find nothing in the record to preponderate against that decision. <u>See</u> T.R.A.P. 13(d).

*Damages*

Co-op also takes issue regarding the amount of damages that the trial court awarded. Since this case was tried without a jury, review of the damage award is governed by Rule13(d) of the Tennessee Rules of Civil Procedure, which provides in pertinent part: "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise."

The Bank is entitled to be placed in the same position it would have been had the contract been performed and should not profit from Co-op's breach. <u>See</u> <u>Hennessee v. Wood Group Enterprises, Inc.</u>, 816 S.W.2d 35, 37 (Tenn. Ct. App. 1991). The trial court awarded the amount of

8

the promissory note.[5]  The Bank did not seek any unnecessary damages, but only that amount lost

as a direct result of the Defendant's breach.  Since, had the parties performed, the Bank would have

been paid back in that amount, we find no error in the trial court's determination. [6]

Finally, Co-op argues that the Bank breached its duty to mitigate damages by failing to

pursue payment from Kevin Paschall.   Co-op has the burden of proving that the Bank acted in an

unreasonable manner, as well as the amount that should be set off.  See State ex rel. Chapdelaine v.

Torrence, 532 S.W.2d 542 (Tenn. 1975).  The bare allegation that the Bank should have pursued

Kevin Paschall will not suffice.   In that regard, the following passage is entirely applicable:

> The rule with respect to the mitigation of damages may not be invoked by a contract
> breaker "as a basis for hypercritical examination of the conduct of the injured party,
> or merely for the purpose of showing that the injured person might have taken steps
> which seemed wiser or would have been more advantageous to the defaulter.

Action Ads, Inc. v. William B. Tanner Co., Inc., 592 S.W.2d 572 (Tenn. Ct. App. 1979).

We find no error in the trial court's damage award.   The award is sufficient to place the Bank

---

[5] Specifically, the judgment provided that the Bank was entitled to recover the amount due under the promissory note, or $70,200.00 plus interest at the rate of ten percent (10%) from March 13, 1997 until November 19, 1998. On that later date, a payment of $10,616.38 was realized through the foreclosure of a part of the collateral, thereby reducing the principal amount due.  The remaining balance accrued interest at the rate of 10% per annum from November 19, 1998 to the present.

[6] Contrary to Co-op's argument in this regard, a breaching party may not take advantage of hypothetical contingencies in order to reduce an injured party's damage award. It is certainly true that a natural disaster could have occurred and prevented Kevin Paschall from re-paying the loan. That possibility, however, does not, nor under equity principles should it, relieve Co-op of its liability.

9

in the same position it would have occupied had Co-op performed. Additionally, we find no basis for concluding that the award should be reduced due to the Bank's failure to mitigate its damages. Other than a conclusory allegation, Co-op has failed to provide any proof that the Bank breached its duty to mitigate its damages.

## Conclusion

For the foregoing reasons, we affirm the trial court decision. Judgment shall be rendered in the amount of $70,200.00 with interest calculated thereon at the rate of 10% per annum from March 13, 1997 to November 19, 1998. From November 19, 1998 to the present, the principal balance due shall be reduced by $10,616.38 with 10% interest calculated thereon. Costs of this appeal are taxed against the appellant, Weakley Farmers Cooperative, for which execution may issue if necessary.