# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 16, 2010 Session

## FLOYD E. BELL v. ELLER MEDIA COMPANY, A Tennessee Corporation

### Direct Appeal from the Chancery Court for Shelby County
#### No. CH-07-0700      Walter L. Evans, Chancellor

### No. W2010-01241-COA-R3-CV - Filed January 20, 2011

Pursuant to a lease agreement, Defendant was allowed to place a billboard on Plaintiff's building.  After the billboard allegedly caused damage to Plaintiff's building, Plaintiff notified Defendant.  Defendant then sent a letter to Plaintiff terminating the lease, but Plaintiff claims Defendant later agreed to remove the billboard and make repairs to his building. When such repair and complete removal were not made, Plaintiff filed suit alleging breach of contract and promissory estoppel. Defendant moved for summary judgment, which the trial court granted, and we affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Gregory D. Cotton, Memphis, Tennessee, for the appellant, Floyd E. Bell

Robert L. J. Spence, Jr., Bryan M. Meredith, Memphis, Tennessee, for the appellee, Eller Media Company

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

According to Floyd E. Bell ("Plaintiff"), Plaintiff purchased a building located at 1561 Elvis Presley Blvd. Memphis, Tennessee, in July 1989. Upon purchase, Plaintiff assumed a prior "Lease Agreement" between his predecessors in title and the predecessors in title to Eller Media Company ("Defendant") allowing the placement of a billboard on the roof of the building. In late 2000, Plaintiff claims he discovered water damage to his building allegedly caused by the billboard. That same week, he began repeatedly telephoning Defendant. Defendant "eventually sent someone out" but made no repairs to the property.

On January 15, 2001, Defendant sent Plaintiff a letter stating that such letter constituted written notice of the termination of the Lease Agreement, effective February 15, 2001. Plaintiff claims that he telephoned Defendant on January 18, 2001 regarding removing the billboard and repairing the damage, and a January 19, 2001 letter from Defendant to Plaintiff confirms that "[Defendant] will be making repairs to the roof from any damage which may be caused by the sign."

Plaintiff claims that Defendant employed City Roofing Company to remove the billboard and to repair the damaged building. He further states that City Roofing Company partially completed the billboard removal, but was forced to remove its equipment in July 2001, when Defendant "did not take the necessary steps for City Roofing [Company] to complete the job[.]"[1] Plaintiff contends that in July 2001, "it became apparent, with City Roofing's removal of its equipment, that Eller Media would not be honoring its obligation to completely remove the billboard and repair Mr. Bell's building." Thus, Plaintiff filed a "Complaint for Breach of Contract" against Defendant on April 2, 2007, alleging both breach of contract and promissory estoppel. Defendant then filed a motion for summary judgment, claiming that Plaintiff's claims were time-barred, as they had not been filed within six years from Defendant's alleged breach of contract on February 15, 2001.[2] After Plaintiff amended his complaint, Defendant filed a second motion for summary judgment, again asserting that Plaintiff's claims were barred by the statute of limitations. In a February 18, 2010 order, the

_____

[1]Both an April 2001 proposal from City Roofing Company and a July 2001 letter from City Roofing Company to Plaintiff are included in the record. The letter states "We at City Roofing have removed our equipment and materials from your job site. I have not had any response in reference to my letter dated June 20, 2001, and without direction, we cannot do any work on this project." Plaintiff implies that the June 20, 2001 letter was directed to Defendant; however, the letter does not appear in the record.

[2]*See* **Tenn. Code Ann. § 28-3-105**.

trial court granted Defendant's motion for summary judgment. Specifically, the trial court found that the parties had not orally modified the Lease Agreement, as the agreement specifically prohibited such, and that Plaintiff's breach of contract cause of action, which had accrued on February 15, 2001, was time-barred. It further found that Plaintiff's promissory estoppel claim was barred because Plaintiff had failed to demonstrate detrimental reliance.

Plaintiff filed a "Motion to Reconsider Under Rule 59.04," arguing that the trial court erred in finding that the breach occurred on February 15, 2001, rather than "at the time Plaintiff became aware of Defendant's intention to breach[,]" and in finding no detrimental reliance. The trial court denied Plaintiff's motion to reconsider, and Plaintiff appeals.

## II.  ISSUES PRESENTED

Appellant presents the following issues for review:

1. Whether the trial court erred in finding that the Plaintiff's breach of contract claim accrued on February 15, 200[1] and is therefore barred by the statute of limitations; and

2. Whether the trial court erred in finding that Plaintiff did not suffer a detriment precluding his claim for promissory estoppel.

For the following reasons, we affirm the trial court's grant of summary judgment to Defendant.

## III.  STANDARD OF REVIEW[3]

---

[3]Plaintiff's Notice of Appeal lists the date of the final judgment appealed as April 16, 2010–the date of the trial court's order denying his motion for reconsideration. However, on appeal, both parties proceed as though the order appealed is the trial court's February 18, 2010 order granting Defendant's motion for summary judgment. Even if we were to assume that an appeal of the order denying reconsideration does not automatically include an appeal of the underlying order denying summary judgment, we nonetheless, find that Tennessee Rule of Appellate Procedure 3(f)'s notice requirements have been met, such that the denial of summary judgment may be considered. *See* **Tenn. R. Civ. P. 3 (Advisory Commission Comments)** ("The purpose of the notice of appeal is simply to declare in a formal way an intention to appeal. As long as this purpose is met, it is irrelevant that the paper filed is deficient in some other respect. Similarly, the notice of appeal plays no part in defining the scope of appellate review. Scope of review is treated in Rule 13. This subdivision read in conjunction with Rule 13(a) permits any question of law to be brought up for review [except as otherwise provided in Rule 3(e)] as long as any party formally declares an intention to appeal in a timely fashion."). Because the issue has not been raised by either party, we do not address whether the trial court erred in denying Plaintiff's motion for reconsideration.

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green v. Green,* 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)). "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Id.* Not every factual dispute requires the denial of a motion for summary judgment. *Id.* at 514. To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." *Id.* (citing *Eskin v. Bartee,* 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton,* 5 S.W.3d 635, 639 (Tenn. 1999)).

When the party moving for summary judgment is a defendant asserting an affirmative defense, he or she may shift the burden of production by alleging undisputed facts that show the existence of the affirmative defense. ***Hannan v. Alltel Publ'g Co.,*** 270 S.W.3d 1, 9 n.6 (Tenn. 2008). "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." ***Martin,*** 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Id.* (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W .2d at 215 n. 6).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. ***Martin,*** 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.,* 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when

the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion--that the moving party is entitled to a judgment as a matter of law." *Green,* 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't,* 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee,* 90 S.W.3d 614, 620 (Tenn. 2002)).

## IV.  DISCUSSION

### *A.  Accrual of Breach of Contract Cause of Action*

On appeal, Plaintiff argues that the trial court erred in finding his breach of contract claim accrued on February 15, 2001, and therefore, that his April 2, 2007 complaint was untimely.  Plaintiff offers three alternative theories as to why his claim accrued "at the earliest in May 2001."

### 1.  Rescission

First, Plaintiff contends that Defendant's post-January 15, 2001 conduct effectively rescinded its stated intention to terminate the Lease Agreement.  As evidence of rescission, Plaintiff cites a January 18 conversation between the parties in which Defendant allegedly "made verbal communications . . . that it intended to make the repairs as required by the Lease Agreement" as well as the January 19, 2001 letter from Defendant confirming its intention to "mak[e] repairs to the roof[.]"  Additionally, Plaintiff points to the commencement of repair work by City Roofing, whom he claims was contracted by Defendant.  Because Defendant "continued to partially perform under the Lease Agreement through May 2001[,]" Plaintiff argues, the six-year statute of limitations for breach of contract did not begin to run until May 2001, and therefore, his April 2, 2007 complaint was not time-barred.

In both his complaint and amended complaint, Plaintiff vaguely alleged that "Defendant Eller has breached its contract with Plaintiff Bell and as a result Plaintiff Bell has suffered damages to his Building, loss of advertising, loss of the use of his Building, and loss of business."  Thus, in its first set of interrogatories, Defendant asked Plaintiff to "state the factual basis for the allegation . . . that 'Defendant Eller has breached its contract with Plaintiff Bell,' and identify all documents supporting such allegation."  However Plaintiff, again, vaguely responded that its "allegation . . . is due to Defendant's terminating [its] contract with Plaintiff."  Defendant then sought the production of "any and all contracts between Plaintiff and Defendant upon which Plaintiff bases his breach of contract claim []."  In response, Plaintiff produced only the January 15, 2001 Lease Agreement termination

letter.

In its appellate brief, Defendant argues that Plaintiff failed to raise the issue of rescission in the trial court. However, in his reply brief, Plaintiff contends that this issue was properly raised in his Motion for Reconsideration after summary judgment was granted. "'[A] Tenn. R. Civ. P. 59.04 motion should not be used to alter or amend a summary judgment if it seeks to raise new, previously untried legal theories, [or] to present new, previously unasserted legal arguments[.]" *Lockwood v. Hughes*, No. M2008-00836-COA-R3-CV, 2009 WL 1162577, at *7 (Tenn. Ct. App. Apr. 28, 2009) (quoting *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998) (affirming summary judgment and refusing to consider "easement of presumption" defense first raised in motion to alter or amend summary judgment, as it "came too late."), *overruled in part on other grounds by Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000)). Because this newly-raised rescission theory cannot be advanced to alter or amend the trial court's grant of summary judgment, we, likewise, find that it should not be considered by this Court in determining whether the trial court correctly granted summary judgment.

## 2. Severability

Next, Plaintiff asserts that the Lease Agreement was a severable contract, and, therefore, that even if Defendant terminated the rent provisions of such via the January 15, 2001 letter, the repair provisions remained intact. He claims that the cause of action for breach of the repair provisions did not accrue until May 2001 when Defendant ceased performing under that provision, and thus, that his April 2007 complaint was timely filed.

Like rescission, which we addressed above, Defendant argues that Plaintiff failed to raise the issue of severability in the trial court. We find no indication that the issue was raised prior to Plaintiff's motion to reconsider, and Plaintiff again argues that this Court may consider the issue on appeal simply because the new theory was advanced in such motion. For the reasons set forth above, we will not address Plaintiff's severability argument on appeal.

## 3. Verbal Agreement

As we stated above, in his complaint and amended complaint, Plaintiff vaguely alleged that Defendant "has breached its contract with Plaintiff Bell and as a result Plaintiff Bell has suffered damages to his Building, loss of advertising, loss of the use of his Building, and loss of business." Plaintiff briefly mentioned that Defendant had "agreed to remove the

sign from Plaintiff Bell's Building and make necessary repairs[,]" but no specific claim for breach of a verbal contract was set forth.

However, in response to Defendant's motion for summary judgment, Plaintiff stated as follows:

> Defendant attempts to state that Plaintiff's cause of action is based upon Defendant's termination of the lease agreement. This is not factually correct. As stated above, Plaintiff's cause of action arises from Defendant's failure to properly remove the sign structure and make necessary repairs after the lease was terminated by Defendant. Further, Defendant erroneously states that the only verbal agreement between Plaintiff and Defendant occurred in January 2001. As set out in Plaintiff's Affidavit . . . Defendant and Plaintiff had communications up through April 2001 during which Defendant continued to promise Plaintiff that it would remove the sign structure and make the required repairs. These communications simply *modified* the existing lease agreement. Under the lease agreement, Defendant is obligated to remove the sign structure and to make repairs for damage caused by the sign structure within 48 hours. Plaintiff and Defendant verbally *modified* that agreement to allow Defendant additional time to make those repairs. The verbal *modification* . . . did not lack consideration and was sufficiently definite to be enforceable.

(emphasis added). In granting summary judgment to Defendant, the trial court rejected Defendant's oral modification argument, finding that "any oral modification is specifically prohibited by the terms of the Lease Agreement between the parties[,]" and furthermore, "that, even if true, any oral modification is also barred by the applicable statute of limitations."

On appeal, as a third alternative theory, Plaintiff contends that even if the January 15, 2001 letter was effective to terminate the Lease Agreement, that the parties subsequently entered into a "new" verbal agreement for the repairs. Plaintiff claims that the statute of limitations began to run on this verbal agreement in May 2001, when Defendant "stopped responding to Mr. Bell and City Roofing."

Our review of the record reveals no indication that Plaintiff's argument regarding a "new" post-termination verbal agreement between the parties was raised in the trial court. Instead, it appears that Plaintiff is attempting to raise this issue for the first time on appeal. Accordingly, we will not address this issue. ***See Simpson v. Frontier Cmty. Credit Union***, 810 S.W.2d 147, 153 (Tenn. 1991).

In his reply brief, Plaintiff renews his trial court argument regarding an oral *modification* of the parties' Lease Agreement. "A reply brief is a response to the arguments of the appellee. It is not a vehicle for raising new issues [on appeal]." ***Owens v. Owens***, 241 S.W.3d 478, 499 (Tenn. Ct. App. 2007) (citing Tenn. R. App. P. 27(c); *Denver Area Meat Cutters & Employers Pension Plan v. Clayton*, 209 S.W.3d 584, 594 (Tenn. Ct. App. 2006)). However, to the extent that Plaintiff's initial appellate brief could be construed as raising the oral modification argument, we find that the Lease Agreement prohibited such. Specifically, under the heading "Entire Agreement[,]" it provided in part that "It is expressly understood that neither the Lessor nor the Lessee is bound by any stipulations, representations or agreements not printed or written in this lease." Plaintiff concedes that Defendant "would not commit the verbal agreement i.e. contract to writing."

## B. *Promissory Estoppel*

Finally, Plaintiff contends that the trial court erred in finding his promissory estoppel claim precluded because he "did not suffer a detriment[.]" "Promissory estoppel is based on 'a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" ***Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.***, 195 S.W.3d 637, 645 (Tenn. Ct. App. 2006) (quoting *Calabro v. Calabro*, 15 S.W.3d 873, 878 (Tenn. Ct. App. 1999)). The doctrine, however, is not without limitations:

> The reason for the doctrine is to avoid an unjust result, and its reason defines its limits. No injustice results in refusal to enforce a gratuitous promise where the . . . promisee's action in reliance was unreasonable or unjustified by the promise. The limits of promissory estoppel are: (1) the detriment suffered in reliance must be substantial in an economic sense; (2) the substantial loss to the promisee in acting in reliance must have been foreseeable by the promisor; (3) the promisee must have acted reasonabl[y] in justifiable reliance on the promise as made.

***Id.*** (quoting *Calabro*, 15 S.W.3d at 879). Promissory estoppel is commonly referred to as "detrimental reliance" because a plaintiff must demonstrate not only that a promise was made, but also that he reasonably relied upon that promise to his detriment. ***Calabro***, 15 S.W.3d at 879 (citing *Engenius Entertainment, Inc. v. Herenton*, 971 S.W.2d 12, 19-20 (Tenn. Ct. App. 1997)).

At his deposition, Plaintiff was questioned regarding the detriment he suffered in reliance upon Defendant's alleged promises to repair his building. Plaintiff explained his detrimental reliance as follows:

> Well, you know, I run an auto body repair shop. It takes a lot for me to try to concentrate on what I was supposed to be doing in taking care of the business at hand, to try to do the things that I need to do in a prompt fashion. And with this hanging over my head, it was hard for me to function.
>
> . . . .
>
> Well, you know, whenever my customers have to come around to the side and you've got your front of your building looking all in shambles and debris falling on your customers, and it is something that should have been done several months ago, that is detrimental to me.
>
> . . . .
>
> I could think about my health. I'm concerned about my health, the mold and the mildew. I think that is detrimental to my health, and the dust particles, debris. If this had been taken care of, I wouldn't be having this problem on a continued basis.

In his appellate brief, Plaintiff further cites as evidence of detrimental reliance that the billboard "caused major damage to his property" which led to a loss of business, and that because of the property's poor condition, he was unable to operate an express painting booth for which he advertised in the "Yellow Pages." Plaintiff claims a total economic loss of $52,498.00.

Plaintiff seems to misconceive the detrimental reliance standard. He has listed damages stemming from Defendant's failure to repair his building, but he fails to explain, or even allege, how such damages resulted from his *reliance* upon Defendant's promise to make such repairs. Because Plaintiff has not demonstrated that he "acted reasonabl[y] in justifiable reliance on the promise as made[,]" ***Barnes & Robinson Co., Inc.***, 195 S.W.3d at 645 (quoting *Calabro*, 15 S.W.3d at 879), we affirm the trial court's finding that Defendant's promissory estoppel claim is barred. For the aforementioned reasons, the trial court's grant of summary judgment to Defendant is affirmed.

### IV. CONCLUSION

For the aforementioned reasons, we affirm the trial court's grant of summary judgment. Costs of this appeal are taxed to Appellant, Floyd E. Bell, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.